UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| MATTHEW SILVA, | ) | CASE NO. C04-1484-JCC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| KING COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### INTRODUCTION AND SUMMARY CONCLUSION

This is a civil rights action brought under 42 U.S.C. § 1983. Plaintiff alleges in his complaint that the legal access scheme at the King County Regional Justice Center ("RJC") in Kent, Washington is constitutionally inadequate. Plaintiff identifies the following defendants in his complaint: King County; Larry Mays, King County Jail Director; Robert Deneui, RJC Corrections Programs Administrator; Teri Hansen, RJC Classification Supervisor; and, Jim McKean, RJC Classification Officer.

Defendants now move for summary judgment. Plaintiff, despite having been advised of the summary judgment requirements pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998),

REPORT AND RECOMMENDATION
PAGE -1

has filed no response to defendants' motion.[1] Defendants' motion for summary judgment is now ripe for review. This Court, having reviewed defendants' motion, and the balance of the record, concludes that defendants' motion for summary judgment should be granted and that this action should be dismissed with prejudice.

## FACTS

On April 5, 2004, plaintiff was booked into the RJC. (Dkt. No. 286 at 2.) This was plaintiff's fourteenth booking into a King County detention facility since 1988. (*Id.*) Plaintiff remained in the RJC until early October 2005, when he was apparently transferred into the custody of the Washington Department of Corrections. (*See* Dkt. No. 250.) In the 18 months that plaintiff was incarcerated at the RJC, he filed numerous actions in the state and federal courts, including this action in which he challenges the adequacy of the legal access scheme at the RJC. (*See* Dkt. No. 286 at 2.)

Plaintiff identifies in his complaint a number of deficiencies which he contends render the legal access scheme at the RJC constitutionally inadequate. (*See* Dkt. No. 5.) Specifically, plaintiff complains that inmates are not allowed physical access to a law library but must, instead, request cases and statutes by "kiting" untrained general library staff. (*Id.* at 11.)

Plaintiff also complains that inmates who want to challenge the fact or conditions of their confinement are not afforded access to the Legal Materials Services ("LMS"), a central feature of the RJC legal access scheme, because the LMS is made available only to inmates who have first been authorized by a court to proceed pro se. (*Id.* at 12.) Plaintiff contends that because of this

---

[1] The summary judgment requirements were set forth in this Court's Order Re: Pretrial Preparations issued on November 18, 2004. (*See* Dkt. No. 73.)

REPORT AND RECOMMENDATION
PAGE -2

01 limitation, he has been required to file "skeleton" complaints in order to obtain a court order that
02 will allow him to gain adequate access to materials necessary to litigate the action. (*Id*. at 15.)

03   Finally, plaintiff complains that the LMS lacks certain necessary materials, that no training
04 is provided on how to use the legal research database, that there are often delays in receiving
05 requested legal materials, and that there is no way to conduct confidential legal research. (Dkt.
06 No. 5 at 11, 13-14.)

07   Defendants have submitted numerous declarations throughout the course of this action
08 detailing the resources available to plaintiff at the RJC to facilitate his access to the courts.
09 Defendants acknowledge that the RJC prioritizes access to legal materials based on the pro se
10 status of the inmate and the type of case the inmate is pursuing. (*See* Dkt. No. 18 at 2 and Ex. A;
11 Dkt. No. 175 at 3.) Inmates who are proceeding pro se in a criminal case are given top priority.
12 (*Id*.) Inmates who are proceeding pro se in a civil case against a government agency are given the
13 next level of priority. (*Id*.) Represented inmates who make general requests for legal information
14 are given last priority. (*Id*.) Because of the high demand for assistance by pro se inmates, this
15 priority system helps the library to manage competing demands. (Dkt. No. 18 at 2.)

16   In order to gain priority access, an inmate must provide proof that he has been authorized
17 by a court to proceed pro se. (*Id*.) Inmates who are authorized to proceed pro se may request
18 a LMS session. (*See* Dkt. No. 18 at 2 and Ex. A.) In his first months at the RJC, plaintiff was
19 represented by counsel in his criminal case and had brought no civil lawsuits against any
20 government agency and, thus, any requests for legal materials would have been dealt with as
21 general legal requests and assigned a lower priority than requests by pro se inmates. (Dkt. No.
22 18 at 3; Dkt. No. 175 at 4.) In July, 2004, plaintiff filed suit against a government agency and

REPORT AND RECOMMENDATION
PAGE -3

therefore became eligible for up to one hour of access each week to a LMS session.[2] (*See* Dkt. No. 175 at 4.)

During the course of plaintiff's incarceration, Paul Sewell, a librarian with a law degree, was responsible for meeting with inmates who requested a LMS session. (*See* Dkt. No. 18 at 2; Dkt. No. 175 at 2.) At their LMS sessions, inmates were able to conduct legal research on a laptop computer. (*Id*.) The laptop computer provided access to Washington cases, codes, and court rules, to United States Supreme Court decisions, and to Ninth Circuit Court of Appeals and District Court cases.[3] (Dkt. No. 18 at 3; Dkt. No. 175 at 2.) Inmates also had access to various other legal materials which Mr. Sewell maintained on a cart which accompanied the laptop. (*Id*.) At times relevant to this action, the cart contained the RCWAs, certain Washington Practice volumes, the court rules, the Washington Sentencing Guidelines Manual, Black's Law Dictionary, the Federal Rules of Criminal Procedure, the Federal Rules of Civil Procedure, and the Federal Sentencing Guidelines. (Dkt. No. 18 at 3; Dkt. No. 175 at 2.) Mr. Sewell was available during these sessions to provide instruction and research assistance to inmates. (Dkt. No. 285 at 2.)

Access to legal research materials was not limited to LMS sessions. (Dkt. No. 18 at 3; Dkt. No. 175 at 3.) Inmates were also permitted to submit kites as often as they wanted to obtain

---

[2] Following his conviction in February 2005, plaintiff elected to represent himself during the sentencing phase of his criminal proceedings. (*See* Dkt. No. 175 at 4.) At that time he became eligible for up to two hours of access to the LMS session each week. (*Id*.)

[3] The Ninth Circuit materials were added to the laptop in April 2005. (Dkt. No. 285 at 2.) Up until that time, inmates could submit subject search requests to Mr. Sewell who would provide the inmate with a printout of the search results. (*See id*; *see also,* Dkt. No. 18 at 3 and Dkt. No. 175 at 2.) The inmate could then select cases from the search results and Mr. Sewell would retrieve them and deliver them to the inmate in a timely fashion. (*See* Dkt. No. 285 at 2.)

REPORT AND RECOMMENDATION
PAGE -4

01 specific cases or books. (*Id.*) Inmates were, however, limited to a total of five legal books at one
02 time. (*Id.*)

03 In addition to the legal research materials described above, plaintiff was also provided with
04 supplies such as paper, pencil and envelopes (Dkt. No. 175 at 3), and with access to library copy
05 services (*Id.*), and notary services (Dkt. No. 177 at 2). Defendants state that during the course
06 of his 18 month incarceration at the RJC, plaintiff was provided with over 54,000 copies of legal
07 pleadings. (*See* Dkt. No. 284 at 7; Dkt. No. 285 at 2.)

08 With respect to the confidentiality of an inmate's legal research requests, defendants state
09 that research requests were monitored only to the extent necessary to actually retrieve the
10 documents requested by the inmate. (*See* Dkt. No. 284 at 8; Dkt. No. 285 at 3.) Defendants also
11 acknowledge that when materials were submitted for copying, the library staff was required to
12 check for contraband and for anything that might cause the copy machine to malfunction, such as
13 staples tape, folded corners, etc. (*See id.*) Defendants deny that the library staff ever intentionally
14 disclosed an inmate's requested research materials or information regarding strategy to an inmate's
15 opposing counsel. (*Id.*)

16 <u>DISCUSSION</u>

17 <u>Summary Judgment Standard</u>

18 Summary judgment is appropriate when, viewing the evidence in the light most favorable
19 to the nonmoving party, there exists "no genuine issue as to any material fact" such that "the
20 moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact
21 is a fact relevant to the outcome of the pending action. *See Anderson v. Liberty Lobby, Inc.*, 477
22 U.S. 242, 248 (1986). Genuine issues of material fact are those for which the evidence is such that

01 "a reasonable jury could return a verdict for the nonmoving party." *Id.*

02 In response to a properly supported summary judgment motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the existence of the elements essential to his case. *See* Fed. R. Civ. P. 56(e). A mere scintilla of evidence is insufficient to create a factual dispute. *See Anderson*, 477 U.S. at 252. In ruling on summary judgment, the court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994).

### 14th Amendment Violation

Plaintiff alleges in his complaint that defendants have violated his federal constitutional right to access to an adequate law library, or to persons trained in the law, for purposes of challenging the fact and/or conditions of his confinement. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court acknowledged that inmates have a constitutional right of meaningful access to the courts premised on the due process clause. *Id.* at 821. The Supreme Court subsequently made clear that in order to adequately allege a cause of action for deprivation of the right of access to the courts, an inmate must demonstrate that he suffered some actual injury to his right of access. *Lewis v. Casey*, 518 U.S. 343 (1996).

The Supreme Court explained in *Lewis* that *Bounds* did not create an abstract, free-standing right to a law library or to legal assistance, and that an inmate therefore could not establish relevant actual injury "simply by establishing that his prison's law library or legal assistance program [was] sub-par in some theoretical sense." *Id.* at 351. Rather, in order to

establish a *Bounds* violation, an inmate was required to demonstrate that the alleged shortcomings in the prison's legal access scheme had hindered, or were hindering, his ability to pursue a non-frivolous legal claim. *See id*. at 354-55. The Supreme Court also explained in *Lewis* that *Bounds* "[did] not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id*. at 355.

While plaintiff alleges generally that the legal access scheme at the RJC is deficient, and provides some specific examples of what he believes those deficiencies to be, the record before this Court establishes that plaintiff had access to significant resources during his incarceration at the RJC which enabled him to file numerous actions in both the state and federal courts. Plaintiff identifies in his complaint a number of types of actions that he claims he was unable to bring because of the alleged deficiencies in the legal access scheme at the RJC. However, when the Court views this list of potential actions in light of the number of actions plaintiff actually was able to file, the Court must conclude that plaintiff's inability to file these additional actions was not attributable to the fact that he lacked the tools necessary to do so.

Plaintiff fails to satisfy this Court that he suffered any actual, concrete injury to his right of access. Accordingly, plaintiff has not adequately alleged a cause of action for deprivation of his right of access to the courts and defendants are therefore entitled to summary judgment with respect to that claim.

<u>State Created Liberty Interest</u>

Plaintiff also alleges in his complaint that he has a state created liberty interest in access

REPORT AND RECOMMENDATION
PAGE -7

to necessary law books and reference materials while incarcerated under the mandatory language of WAC 289-22-200(4)(a) and the Fourteenth Amendment to the United States Constitution. Defendants argue in their summary judgment motion that this regulation did not create a liberty interest, that the regulations contained in Title 289 of the Washington Administrative Code are not binding upon King County, and, finally, that even if there was a liberty interest under the WAC, there has been no violation of that interest.

WAC 289-22-200(4)(a) provides as follows:

> When adequate professional legal assistance is not available to prisoners for purposes of preparing and filing legal papers, a jail shall provide access to necessary law books and reference materials.

This Court is satisfied, based on the record before it, that plaintiff has been provided access to the law books and reference materials necessary to prepare and file legal papers. Thus, this Court agrees that even if there was a liberty interest under the WAC, plaintiff has not established that there has been any violation of that interest. Accordingly, defendants are entitled to summary judgment with respect to that claim as well.

### CONCLUSION

For the reasons set forth above, this Court recommends that defendants' motion for summary judgment be granted and that this action be dismissed with prejudice.

DATED this 29th day of September, 2006.

Mary Alice Theiler
United States Magistrate Judge